Mormile v Marshall (2024 NY Slip Op 06390)

Mormile v Marshall

2024 NY Slip Op 06390

Decided on December 19, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 19, 2024

535684
[*1]Biagio Mormile et al., Appellants,
v
Thomas Marshall Jr. et al., Respondents.

Calendar Date:November 20, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, Ceresia and Powers, JJ.

Finkelstein & Partners, LLP, Newburgh (Lawrence D. Lissauer of counsel), for appellants.
Costello, Cooney & Fearon, PLLC, Syracuse (Daniel P. Fletcher of counsel), for respondents.

Lynch, J.
Appeal from a judgment of the Supreme Court (Joseph A. McBride, J.), entered May 24, 2022 in Madison County, upon a verdict rendered in favor of defendants.
Plaintiff Biagio Mormile and his spouse, derivatively, commenced this action alleging that Mormile suffered various serious injuries in a motor vehicle accident in March 2014, when his vehicle was rear-ended by a vehicle driven by defendant Ashley Marshall and owned by her parents, defendants Thomas Marshall Jr. and Sarah Marshall. Defendants' liability for causing the accident was established prior to trial. The case proceeded to trial on the issue of whether Mormile sustained a "serious injury" within the meaning of Insurance Law § 5102 (d) and, if so, the amount of damages sustained. A jury returned a verdict in defendants' favor finding that Mormile's injuries were not caused by the accident. Plaintiffs appeal.
Plaintiffs maintain that Supreme Court's failure to comply with the Uniform Civil Rules for the Supreme Court and the County Court that govern the jury selection process deprived them of a fair trial (see 22 NYCRR 202.33). We agree. Under the uniform rules, Supreme Court is required to designate the method of jury selection from one of the options specified, to wit: (1) White's method, (2) struck method, (3) strike and replace method, or (4) other methods approved by the Chief Administrator (see 22 NYCRR 202.33 [c], [f]). The specific procedures for each method are outlined in Appendix E of the rules (see 22 NYCRR 202.33 [g]).
Here, Supreme Court did not direct a specific method for jury selection up front, but did establish that jurors would be questioned in rounds, with any challenge for cause or peremptory challenges to be made after each round of questions. This is the process employed in White's method, albeit here the court started with 14 prospective jurors rather than six (see 22 NYCRR 202.33 [g], Appendix E [B] [2]). Pursuant to CPLR 4109, each side has a combined total of three peremptory challenges, plus one peremptory challenge for every two alternate jurors. The difficulty here arose at the conclusion of the first round of questioning. After plaintiffs exercised their first peremptory challenge, Supreme Court advised that it would not alternate the challenge process by requiring defendants to go next with any challenges. At that point, plaintiffs opted not to exercise any further challenges. Defendants then exercised one peremptory challenge.
During the second round, after the prospective jurors were questioned, plaintiffs applied to have defendants exercise any peremptory challenge first. Pertinent here, the uniform rules pertaining to White's method specify that "[i]n subsequent rounds, the first exercise of peremptory challenges shall alternate from side to side" (22 NYCRR 202.33 [g], Appendix E [B] [5]). Supreme Court declined the request. As a result, plaintiffs were required to exercise their peremptory challenges first throughout the completion of jury selection[*2].
The uniform rules for conducting voir dire, which not only authorize but require trial judges to direct the method of selection, went into effect on January 1, 1996 (see Horton v Associates in Obstetrics & Gynecology, 229 AD2d 734, 735 [3d Dept 1996]). While Supreme Court explained that the process used here had been utilized for decades, no showing was made that the court's alternative method had been approved by the Chief Administrator of the Courts (see 22 NYCRR 202.33 [f] [4]). We are mindful that both sides ultimately utilized all three of their peremptory challenges, as well as the peremptory challenges for each alternate juror.[FN1] The court's failure to alternate the peremptory challenge process, however, placed plaintiffs in the untenable position of having to utilize a peremptory challenge for a prospective juror that may not have been necessary had defendants been required to go first. This error compromised the fairness of the jury selection process.
Plaintiffs further contend that Supreme Court erred by including the first question on the verdict sheet — i.e., "[h]ave the plaintiffs . . . established that the incident . . . was a substantial factor in causing [Mormile's] injuries?" We agree. The specific issue for the jury to resolve was whether, as a result of the subject accident, Mormile sustained a "serious injury" as set forth in question 2 on the verdict sheet (did Mormile "sustain a significant limitation of use of a body function or system"); question 3 (did Mormile "sustain a permanent consequential limitation of use of a body organ or member"); question 4 (did Mormile "sustain a injury that resulted in a significant disfigurement"); and question 5 (did Mormile "suffer a medically determined injury or impairment of a non-permanent nature . . . that prevented him from performing all of the material acts that constituted his usual and customary daily activities for not less than 90 days during the 180 days immediately following the accident?").
The first question effectively only asks whether there was probable cause to establish that Mormile's injuries resulted from the accident (see PJI 2:70). Having answered "No" to that global question, the jury did not answer questions 2 through 5.[FN2] In effect, the jury did not resolve the appropriate legal issue, i.e., whether Mormile sustained a "serious injury" in the accident, as defined under each of the four distinct categories at issue (see McCulloch v New York Cent. Mut. Ins. Co., 175 AD3d 912, 914 [4th Dept 2019]; Brown v Ng, 163 AD3d 1464, 1465 [4th Dept 2018]; 1A PJI3d 2:88A-G at 599 [2024]).
Under these circumstances, we conclude that a new trial is in order (see Zgrodek v McInerney, 61 AD3d 1106, 1108-1109 [3d Dept 2009]; see also NY Const, art I, § 2). We have reviewed and find plaintiffs' remaining contentions unavailing.
Clark, J.P., Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the Supreme [*3]Court for a new trial, with costs to abide the event.

Footnotes

Footnote 1: Supreme Court authorized each party to exercise a peremptory challenge for each alternate juror instead of just one for both alternate jurors.
Footnote 2: We recognize that the jury checked "No" to question 2, but acknowledged to Supreme Court that they erred in doing so given the instruction not to proceed any further in the event that the answer to question 1 was "No."